UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SANDRA JOHNSON, et al.,

          Plaintiffs,

     v.

KEOLIS AMERICA,

          Defendant.

Case No.  15-cv-03104-MEJ

**ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Re: Dkt. No. 22

## INTRODUCTION

Plaintiffs Sandra Johnson and Jerome Primes ("Plaintiffs") are former employees of Defendant Keolis Transit America, Inc. ("Defendant").  First Am. Compl. ("FAC") ¶ 1, Dkt. No. 21.  They bring this action for damages related to their discharge as bus drivers.  *Id.*  Pending before the Court is Defendant's Motion to Dismiss Plaintiffs' FAC pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Dkt. No. 22.  Plaintiffs filed an Opposition (Dkt. No. 25), and Defendant filed a Reply (Dkt. No. 26).  The Court finds this matter suitable for disposition without oral argument and **VACATES** the February 18, 2016 hearing.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b).  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Defendant's Motion for the following reasons.

## BACKGROUND

On or about December 14, 2007, Mobility Plus Tech Transportation ("MPTS") hired Johnson as a bus driver pursuant to a contract with the City and County of San Francisco.  FAC ¶¶ 1, 11.  Prior to being hired with MPTS, Johnson had a number of convictions, primarily for drug related violations.  *Id.* ¶ 9.  Her last conviction was in 2005.  *Id.* ¶ 10.  MPTS also hired Primes as a bus driver on June 13, 2007.  *Id.* ¶ 30.  He similarly had a record of convictions, with his last conviction in 2007.  *Id.* ¶¶ 30-31.  MPTS was aware of Plaintiffs' conviction records.  *Id.* ¶¶ 12, 32.

During their employment with Defendant, Plaintiffs were members in good standing of the

Local 210 of the Transport Workers Union, AFL-CIO (the "Union").  *Id.* ¶¶ 15, 33.  They were employed under a Collective Bargaining Agreement ("CBA") which prohibited terminations that were not for just cause.  *Id.* ¶¶ 16-17, 34-35.  The CBA expressly required Plaintiffs to challenge individually or through their union "any action against an employee . . . involving discharge" through the CBA's grievance process.  CBA § 7.1, Dkt. No. 12-1.[1]  Under the CBA, a grievance must be "filed within three (3) days of the employee's work days after its occurrence is discovered," and resolved through a three-step grievance process.  *Id.* § 7.2.

Sometime in November 2011, Defendant acquired MPTS.  *Id.* ¶ 14.  On or about January 24, 2012, Defendant terminated Plaintiffs from their positions as bus drivers, allegedly because they failed background checks based on their earlier convictions.[2]  *Id.* ¶¶ 23, 37.  Defendant provided this information to both Plaintiffs in a document entitled "Employee Separation Form."[3]  *Id.* ¶¶ 24, 38; Req. for Judicial Notice ("RJN"), Exs. B, D, Dkt. No. 18-1.  Under the part of this form entitled "Involuntary Separation," Defendant filled in the "Failed background check" box.  *Id.* (all).

On May 2, 2012, Johnson telephoned Perri Newell, Defendant's Vice President of Employee and Labor Relations, and requested her personnel profile.  FAC ¶ 25.  By letter dated May 7, 2012, Newell informed Johnson she had received an incorrect "Termination Notice," and that Johnson was not terminated but was "laid off and eligible for rehire."  *Id.* ¶ 26; RJN, Ex. A.

---

[1] The Court took judicial notice of the CBA in its December 10, 2015 Order re: Motion to Dismiss.  December 10 Order, Dkt. No. 20 at 2 n.1.

[2] In both their original Complaint and FAC, Plaintiffs allege Defendant ordered a mass layoff in November 2011 (Compl. ¶ 38, Dkt. No. 1; FAC ¶ 57), but then allege they were terminated on or about January 24, 2012 (Compl. ¶¶ 23, 29; FAC ¶¶ 23, 37).  Plaintiffs now explain the November 2011 date is the result of "a scrivener's error" and clarify they were terminated on January 24, 2012.  Opp'n at 4.

[3] Plaintiffs request the Court take judicial notice of the separation forms.  Opp'n at 4 n.1.  In general, the Court may not look beyond the four corners of a complaint in ruling on a Rule 12(b)(6) motion, with the exception of documents incorporated into the complaint by reference, and any relevant matters subject to judicial notice.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").  As the separation forms are referenced in the FAC and Plaintiffs rely on them in support of their allegations, the Court GRANTS their request.

United States District Court
Northern District of California

1    Primes received a similar letter from Newell on June 1, 2012, also informing him that he received

2    an incorrect "Termination Notice" and was, in fact, "laid off and are eligible for rehire."  FAC ¶

3    40; RJN, Ex. C.[4]

4         In May 2012, Defendant lost its contract with the City and County of San Francisco.  FAC

5    ¶ 42.  At that time, it sent notices to its current employees under the Worker Adjustment and

6    Retraining Notification Act ("WARN Act"), but did not send any notices to Plaintiffs.  *Id.* ¶¶ 43-

7    44.  Plaintiffs allege they "have never received any WARN notices from any entities," and "were

8    not made aware of the fact that there could be a possible cause of action concerning the lack of

9    WARN to them until they met with counsel in the Spring of 2013."  *Id.* ¶¶ 45-46.

10        On an unspecified date, but "[s]oon after their terminations," Plaintiffs requested the Union

11   file a grievance on their behalf to "challeng[e] their termination that occurred on January 24,

12   2012."  *Id.* ¶ 47.  Plaintiffs allege the Union filed a grievance on their behalf on or about February

13   6, 2012.  *Id.* ¶ 48.  Defendant denied the grievance at the initial step and did not respond when the

14   Union initiated the second step of the grievance process.  *Id.* ¶¶ 49-50.  Plaintiffs allege "they

15   constantly inquired of the Union what was going on with regard to their grievance," but were

16   never informed of its status.  *Id.* ¶ 51.  "They did not inquire of the Defendant because they were

17   under the reasonable belief that they no longer worked for the Defendant."  *Id.* ¶ 52.

18        Plaintiffs filed their initial Complaint on July 6, 2015, alleging two causes of action: (1)

19   failure to provide notice to employees before plant closing or mass layoff in violation of the

20   WARN Act, 29 U.S.C. § 2104(a); and (2) breach of the CBA under the Labor Management

21   Relations Act ("LMRA") section 301, 29 U.S.C. § 185.  Compl. ¶¶ 34-55.

22        After Defendant moved to dismiss the Complaint (Dkt. No. 12), the Court issued an Order

23   on December 10, 2015 granting in part and denying in part Defendant's Motion.  The Court ruled:

24   (1) Plaintiffs' WARN Act claim would be untimely if Defendant terminated them on January 24,

25   2012, or if the mass layoff occurred in November 2011 as alleged; (2) Plaintiffs failed to clearly

26   allege the January 24, 2012 termination constitutes a mass layoff under the WARN Act; and (3)

27

28   ---
[4] The Court takes judicial notice of the May 7 and June 1, 2012 letters as documents referenced in the FAC and relied upon by Plaintiffs.

United States District Court
Northern District of California

1    dismissed their claim for Defendant's breach of the CBA because they did not allege they

2    exhausted their administrative remedies in accordance with the CBA, but granted leave to amend

3    to allege facts demonstrating exhaustion.  December 10 Order at 4-6.

4         Plaintiffs filed the FAC on December 30, 2015, once again alleging failure to provide

5    notice under the WARN Act and breach of the CBA under the LMRA.  FAC ¶¶ 53-74.  Defendant

6    now moves to dismiss, again arguing the applicable statutes of limitations bar each claim or,

7    alternatively, that Plaintiffs cannot state facts sufficient to support their claims.

8                              **LEGAL STANDARD**

9         Rule 8(a) requires that a complaint contain a "short and plain statement of the claim

10   showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint must therefore

11   provide a defendant with "fair notice" of the claims against it and the grounds for relief.  *Bell Atl.*

12   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

13        A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough

14   facts to state a claim to relief that is plausible on its face.  *Id.* at 570.  "A claim has facial

15   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

16   inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

17   678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

18   more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550

19   U.S. at 557).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

20   detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

21   relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

22   cause of action will not do.  Factual allegations must be enough to raise a right to relief above the

23   speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

24        In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as

25   true and construe them in the light most favorable to the plaintiff.  *Id.* at 550; *Erickson v. Pardus*,

26   551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  In

27   addition, courts may consider documents attached to the complaint.  *Parks Sch. of Bus., Inc. v.*

28   *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

United States District Court
Northern District of California

4

1    If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

2    request to amend the pleading was made, unless it determines that the pleading could not possibly

3    be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

4    banc) (internal quotations and citations omitted).  However, the Court may deny leave to amend

5    for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the

6    movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

7    to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

8    *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v.*

9    *Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

**A.    WARN Act Claim**

12    With some exceptions and conditions, the WARN Act forbids an employer of 100 or more

13    employees to "order a plant closing or mass layoff until the end of a 60-day period after the

14    employer serves written notice of such an order."  29 U.S.C. § 2102(a).  The employer must

15    notify, among others, "each affected employee" or "each representative of the affected

16    employees."  *Id.* § 2102(a)(1).  An employer who violates the notice provisions is liable for

17    penalties by way of a civil action that may be brought "in any district court of the United States for

18    any district in which the violation is alleged to have occurred, or in which the employer transacts

19    business."  *Id.* § 2104(a)(5).

20    The WARN Act does not provide a limitations period; accordingly, there is a "presumption

21    that state law will be the source of a missing federal limitations period."  *N. Star Steel Co. v.*

22    *Thomas*, 515 U.S. 29, 31 (1995).  In California, a three year statute of limitations applies to claims

23    for violation of the WARN Act.  *Wholesale & Retail Food Distrib. Local 63 v. Santa Fe Terminal*

24    *Servs., Inc.*, 826 F. Supp. 326, 330-31 (C.D. Cal. 1993) (applying Cal. Civ. Proc. Code § 338,

25    which provides a three year statute of limitations for "[a]n action upon a liability created by

26    statute, other than a penalty or forfeiture.").  WARN Act claims accrue when a plaintiff has

27    suffered an "employment loss" of a termination, or "a layoff exceeding six months[.]"  29 U.S.C.

28    § 2101(a)(6); *Wholesale & Retail Food Distrib. Local 63*, 826 F. Supp. at 331-32.

United States District Court
Northern District of California

5

Plaintiffs allege they suffered an "employment loss" after Defendant ordered a mass layoff in May 2012.  FAC ¶ 57.  However, their own allegations make clear they were laid off well before the May 2012 mass layoff.  Plaintiffs allege Defendant "terminated" them from their positions as bus drivers on January 24, 2012, because they failed background checks based on their earlier convictions.  *Id.* ¶¶ 23, 37.  At that time, Defendant provided this information to both Plaintiffs in the Employee Separation Form, which described their "Involuntary Separation" as the result of "Failed background check[s]."  *Id.* ¶¶ 24, 38; RJN, Exs. B, D.  Plaintiffs argue they were laid off at the time of the mass layoffs because Newell sent them letters around the same time clarifying they received incorrect Termination Notices and were instead laid off.  Opp'n at 4.  However, Newell's letters did not change the effective date Plaintiffs were laid off, nor did the reasoning behind the layoffs change.  RJN, Exs. A, C.  Plaintiffs admit the mass layoffs occurred after Defendant lost its contract in May 2012, four months after their own layoffs.  FAC ¶¶ 42-43; Opp'n at 4.  Thus, they cannot state a WARN Act claim based on their January 2012 terminations, even if Defendant later clarified Plaintiffs were laid off rather than terminated.

Plaintiffs also contend they have asserted a timely WARN Act claim by alleging Defendant only "sent out WARN notices to certain employees" in May 2012.  FAC ¶¶ 57-60.  However, an employee is entitled to a WARN notice only if they are "affected" by a mass layoff or termination.  29 U.S.C. § 2102(a).  "[A]ffected employees means employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer."  *Id.* § 2101(a)(5) (quotations omitted).  As discussed above, Defendant effectively laid Plaintiffs off in January 2012 for failing background checks— well before the May 2012 layoffs.  Defendant could not have violated the WARN Act by failing to send WARN notices to Plaintiffs in May 2012 because at that time, Plaintiffs could not have reasonably been expected to have experienced an employment loss; Defendant had already laid off both of them months before.

Despite having been afforded the opportunity to amend their complaint to allege otherwise, Plaintiffs continue to base their WARN Act claim on their layoffs in January 2012 while simultaneously alleging Defendant's *mass* layoff occurred in May 2012.  Based on the facts of this

United States District Court
Northern District of California

1    case, such allegations are incompatible and cannot support a WARN Act claim.  The Court must

2    therefore DISMISS Plaintiffs' WARN Act claim WITHOUT LEAVE TO AMEND.

3    **B.    LMRA Claim**

4           Section 301 of the LMRA provides that: "Suits for violation of contracts between an

5    employer and a labor organization representing employees . . . may be brought in any district court

6    of the United States having jurisdiction of the parties, without respect to the amount in controversy

7    or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).  "It has long been

8    established that an individual employee may bring suit against his employer for breach of a

9    collective bargaining agreement." *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151,

10   163 (1983) (citation omitted).

11          Defendant argues (1) the applicable statutes of limitations bars Plaintiffs' LMRA claim, (2)

12   Plaintiffs failed to exhaust their administrative remedies, and (3) Plaintiffs fail to allege facts

13   sufficient to constitute a section 301 claim.  Mot. at 10-14.  As the Court finds Defendant's third

14   argument dispositive, it only addresses that dispute in considering Plaintiffs' LRMA claim.

15          Specifically, Defendant argues Plaintiffs fail to allege facts sufficient to constitute a section

16   301 claim because they do no allege a breach of the duty of fair representation by the Union.  *Id.* at

17   11.  The Court agrees.  To prevail on a complaint for breach of a collective bargaining agreement

18   by an employer, a plaintiff must also prove that her union violated its duty of fair representation to

19   her.  *Cha v. Kaiser Permanente*, 2015 WL 434983, at *3 n.5 (N.D. Cal. Feb. 2, 2015) (citing

20   *DelCostello*, 62 U.S. at 165 (To "prevail against the company" in a § 301 claim, the plaintiff

21   "must not only show that their discharge was contrary to" a collective bargaining agreement "but

22   must also carry the burden of demonstrating breach of duty by the Union.")).  Thus, "the

23   wrongfully discharged employee may bring an action against his employer in the face of a defense

24   based upon the failure to exhaust contractual remedies, provided the employee can prove that the

25   union as bargaining agent breached its duty of fair representation in its handling of the employee's

26   grievance." *Vaca v. Sipes*, 386 U.S. 171, 186 (1967); *see also Soremekun v. Thrifty Payless, Inc.*,

27   509 F.3d 978, 987 (9th Cir. 2007) ("An employee can support an action for breach of the

28   collective bargaining agreement, brought solely against the employer, by showing that the union

United States District Court
Northern District of California

7

violated its duty of fair representation." (citing *DelCostello*, 62 U.S. at 165)).

Here, Plaintiffs do not allege the Union breached the duty of fair representation.  In fact, they admit the "allegations show that the union undertook the grievance procedure on [their] behalf," and "there could not be a viable claim against the union in this situation."  Opp'n at 7 (citing FAC ¶¶ 47-52).  Given Plaintiffs' own allegations that the Union did not breach its duty, their section 301 claim must fail.  *See Bliesner v. Commc'n Workers of Am.*, 464 F.3d 910, 914 (9th Cir. 2006) ("It is true that a breach of a duty of fair representation by the union is a necessary prerequisite to a successful suit against the employer for a breach of the CBA."); *Pastrana v. Local 9509, Commc'ns Workers of Am., AFL-CIO*, 2008 WL 5054112, at *7 (S.D. Cal. Nov. 20, 2008) (noting the Ninth Circuit under *Bliesner* acknowledges that a claim against the union is a prerequisite for a suit against the employer); *accord Buford v. Runyon*, 160 F.3d 1199, 1201 (8th Cir. 1998) ("To prevail on her claim for breach of the collective bargaining agreement, Buford must show, as a prerequisite, that the Union breached its duty of fair representation."); *Vadino v. A. Valey Engr's*, 903 F.2d 253, 261 (3d Cir. 1990) ("The unfair representation claim is the necessary 'condition precedent' to the employee's suit."); *Alford v. Gen. Motors Corp.*, 926 F.2d 528, 531 (6th Cir. 1991) ("if a collective bargaining agreement contains exclusive and final procedures for the resolution of employee grievances, an employee will be prohibited from bringing an action under § 301 absent an allegation that his union breached its duty of fair representation.").  Accordingly, the Court DISMISSES Plaintiffs' LMRA claim WITHOUT LEAVE TO AMEND.

## CONCLUSION

Based on the analysis above, the Court **GRANTS** Defendant's Motion to Dismiss **WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED.**

Dated: February 5, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California

8